Filed: 4/29/2022 1:21 PM
JOHN D. KINARD - District Clerk
Galveston County, Texas
Envelope No. 64046342
By: Shailja Dixit
4/29/2022 1:42 PM

*Status Conference - 07/28/2022*

## CAUSE NO. 22-CV-0757

| | | |
|---|---|---|
| TIMOTHY L. BOURGEOIS and GWEN A. BOURGEOIS, | § § § | IN THE DISTRICT COURT |
| Plaintiffs, | § § | OF GALVESTON COUNTY, TEXAS |
| v. | § § § | |
| SELECT PORTFOLIO SERVICING, INC., HUGHES, WATTERS & ASKANASE, L.L.P. and its agent, ANTHONY ADAN GARCIA, | § § § § | GALVESTON COUNTY |
| Defendants. | § § § | 10TH DISTRICT COURT |

## PLAINTIFF'S ORIGINAL VERIFIED COMPLAINT AGAINST DEFENDANTS FOR DECLARATORY RELIEF, SLANDER OF TITLE, VIOLATIONS OF THE TEXAS FINANCE CODE, FOR INJUNCTIVE RELIEF AND TO EXPUNGE DOCUMENTS FROM THE PUBLIC RECORD AND REQUEST FOR FULL ACCOUNTING

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, the Plaintiffs, Timothy L. Bourgeois and Gwen A. Bourgeois (hereinafter "Plaintiffs"), and by and through their retained counsel, James M. Anderson, and hereby file this Complaint against Defendants Select Portfolio Servicing, Inc.; and Hughes, Watters & Askanase, L.L.P., and its agent, Anthony Adan Garcia, Texas Bar No. 24091639 for Declaratory Relief; for slander of title; for violations of the Texas Debt Collection Act (hereinafter "TDCA"), more particularly known as the Texas Finance Code §§ 392.304(a)(8), 392.404(a)(14) and 392.404(a)(19) ; for Injunctive Relief; to expunge certain documents pertaining to the subject property (hereinafter "Property") under the amendments to the Texas Civil Practice & Remedies Code § 16.033 and for a full accounting and herein state as follows:

### I. DISCOVERY

**EXHIBIT**

**C-1**

exhibitsticker.com

1

1.     Discovery in this cause of action shall be conducted pursuant to Level 3 of the Texas Rules of Civil Procedure.

## II. PARTIES

2.     The Plaintiffs herein are residents within this judicial district, whose last known address is 1904 North Mission Circle, Friendswood, Texas 77546.  The Plaintiffs declare that they are "consumers" as defined under the Texas Finance Code § 392.001(1).

3.     Defendant Select Portfolio Servicing, Inc. (hereinafter "SPS") is a mortgage loan servicer who is acting in the nature and scope of a debt collector under the Texas Finance Code § 392.001(6), which may be served with service of process by the Harris County District Clerk  by certified USPS mail, return receipt requested by serving its registered agent Corporation Service Company D/B/A CSC-Lawyers, Inc.,  211E.7th St., Suite 620, Austin, X 78701.

4.     Defendant Hughes, Watters & Askanase, L.L.P. ( hereinafter "HWA") is a law firm that is acting in the nature and scope of a debt collector under the Texas Finance Code § 392.001(6), which may be served with service of process by the Harris County District Clerk  by certified USPS mail, return receipt requested by serving its Partner, Dominique Varner at 1201 Louisiana, Suite 2800, Houston, Texas 77002.

5.     Defendant Anthony Adan Garcia (hereinafter "Garcia") is a Texas Bar-Licensed attorney and agent that is acting on behalf of Defendant HWA, Texas State Bar No. 24091639, which may be served with service of process by the Harris County District Clerk  by certified USPS mail, return receipt requested to 1201 Louisiana, Suite 2800, Houston, Texas 77002.

## III. JURISDICTION AND VENUE

6.      Jurisdiction is proper as the aforementioned statutory violations occurred in Galveston County, Texas.  In personam jurisdiction is proper because a majority of the actors involved in the pattern of activity reside in and conducted business in Texas. Venue is proper as the subject property situated in Galveston County, Texas and the resulting acts also occurred in Galveston County, Texas.

### IV. GENERAL ALLEGATIONS

7.      It is undisputed that the Plaintiffs jointly own the real property which is the subject of this proceeding.

8.      On November 15, 2003, the Plaintiffs executed a promissory note and a Texas Home Equity Security Instrument in favor of New Century Mortgage Corporation (hereinafter "NCMC"), a copy of which is attached hereto as "Plaintiff's Exhibit 1" and incorporated herein by reference.  Said Security Instrument (hereinafter "HELOC") was recorded in the official real property records of Galveston County, Texas on December 4, 2003, Instrument #2003086140, as evidenced therein.  It appears that Countrywide Home Loans Servicing, L.P. (hereinafter "CWHLS") ended up being the original mortgage loan servicer of the HELOC debt.  CWHLS was allegedly subsumed into Bank of America, N.A on April 27, 2009, but not directly via Bank of America Home Loans Servicing, L.P.

9.      The HELOC contained a provision at Paragraph 19 that allowed NCMC to sell the Note or a partial interest thereof without prior notice to the Plaintiffs.  On April 2, 2007, NCMC's parent company, New Century TRS Holdings, Inc., of which NCMC is a subsidiary, filed a Chapter 11 bankruptcy petition in the United States District Court for the District of Delaware, Case No. 07-10416. New Century Mortgage Corporation was included in that petition and was eventually liquidated.

3

10.     The foregoing Paragraph 8 was necessary to preface the events which followed that the Plaintiffs wish to make this Court aware, that in the HELOC, at Paragraph 14, Notices, (see *Plaintiff's Ex. 1*, supra) the contractual language within the aforementioned paragraph discusses Notice rights of the Lender and the Borrower, not the Servicer, nor the Servicer's attorney or law firm. Since the Lender went bankrupt, the only way that a new Lender could stand in the stead of the now-defunct NCMC was by a lawful assignment of the Note and HELOC to another party, giving the new party the right to act as and be accorded the same standing as the originating Lender.

11.     Between the time that the Plaintiffs executed the Note and HELOC and the filing of NCMC's bankruptcy petition, an alleged *Assignment of Note and Deed of Trust* was executed on September 22, 2006 and caused to be recorded in the official real property records of the Clerk of Galveston County, Texas, on October 11, 2006, as Instrument #2006069280, a copy of which is attached hereto as "Plaintiff's Exhibit 2" and incorporated herein by reference.

12.     The Plaintiffs believe and allege that since *Plaintiff's Exhibit 2*, supra, was recorded before the amendments under the Texas Civil Practice & Remedies Code § 16.033 took effect (*see the footnotes within said code,* "Acts 2007, 80th Leg., R.S., Ch. 819 (S.B. 1781), Sec. 1, eff. June 15, 2007."), the Plaintiff's legal rights to challenge the facial, technical and false defects contained therein apply in this case.

13.     That said document as publicly recorded constitutes wanton, willful and fraudulent misrepresentation and perjury on the part of the parties executing and acknowledging said document for the purposes of creating standing for the alleged Real Estate Mortgage Investment Conduit ("REMIC") trust, when in fact, the parties executing the document knew or should have known otherwise.  This scenario will be more fully outlined within the Plaintiff's Complaint.

14.     The Plaintiffs herein believe and allege that this document (*Plaintiff's Exhibit 2*, supra) was and continues to be relied upon to allegedly represent claimed standing on behalf of the Defendant, SPS, as mortgage loan servicer on behalf of the alleged lender, Deutsche Bank National Trust Company, Trustee, on behalf of the Certificate Holders of Morgan Stanley ABS Capital I Inc. Trust 2004-NC3, Mortgage Pass-Through Certificates, Series 2004-NC3 (hereinafter "DBNTC") to claim to have authority to attempt foreclosure on the Plaintiff's Property.

15.     The subject Assignment (*Plaintiff's Exhibit 2*, supra) that Defendants SPS and HWA and its agent, Garcia, relied upon is the very same Assignment that Defendant SPS previously relied upon by Defendant SPS, to obtain a Home Equity Foreclosure Order from this Court on November 17, 2016 in Cause No. 16-CV-0945, which Defendant SPS never acted upon and thus, the statutory two-year period Defendant SPS relies upon in the current attempted action has expired and is invalid, despite the current actions of said Defendant.

16.     The Plaintiffs maintain and allege that reliance on this bogus Assignment as noted herein is simply an extension of the fraud perpetrated upon this Court in the foreclosure matter which has resulted in the institution of suit herein.

**A. The Plaintiffs Allege that Assignment as evidenced in *Plaintiff's Exhibit 2* is Void under the Texas Civil Practice & Remedies Code § 16.033 due to perjurious and illegal acts of previous co-conspirators to Defraud the Plaintiffs through a pattern of behavior, including but not limited to Securitization Failure.**

17.     The Plaintiffs base the foregoing assertions of perjury and fraudulent misconduct on a joint effort by then-Servicer Bank of America, N.A., it's employees, and its representative law firm, BDWCDF, which acted in concert with each other to "manufacture standing" to attempt a previous foreclose on the Property.

18.     The Plaintiffs claim, believe and allege, under the above-styled Code, that the

Assignment as declared as *Plaintiff's Exhibit 2*, supra, was executed as part of an attempted fraud upon the Plaintiffs, as well as upon the public record, to wit:

      (a.)    The law firm's initials are contained on both pages of the recorded Instrument, shown as *Plaintiffs Exhibit 2*, supra;

      (b.)    The parties executing the document were employed by Bank of America, N.A. in Collin County, Texas;

      (c.)    David Sunlin, Sr. was a Vice President of Bank of America, N.A. at the time he executed the document and thus misrepresented himself, *ultra vires*, as a "Sr. Vice President" of NCMC, when in fact, he knew otherwise; thus committing felony perjury on the face of the document by and through his actions therein;

      (d.)    The Plaintiffs believe and allege that the Assignment was deliberately and purposefully backdated to July 28, 2006 for some unknown reason in concert between Bank of America's employees, whose names are declared on Page 2 of said document has having "Prepared" the document as part of a criminal scheme to defraud the Plaintiffs in an attempt to "memorialize" a transaction that could not have legally occurred;

      (e.)    Christie G. Perkins, then a notary public under the laws of the State of Texas, holding a notarial commission issued by the Secretary of the State of Texas, furthered the perjury by acknowledging the recorded Instrument on September 22, 2006, "for the purposes and consideration therein expressed." The Plaintiffs believe and allege that Perkins was an employee of Bank of America, N.A., whose duties more than likely included notarizing documents similar to the suspect document complained of here (by the thousands). The Plaintiffs further believe that her notary journal will not reflect any of these acknowledgements, and in particular, the notarization of Sunlin's signature in this case;

(f.)     The Plaintiffs further believe and allege that the document was notarized by a Texas notary public in Collin County, Texas, where Bank of America, N.A. is located, not in Irvine, California, where NCMC was located at that time and could have executed its own Assignment without the help of anyone as NCMC had not yet filed for bankruptcy at the time this document was executed;

(g.)     Under Internal Revenue Code § 680(g) and regulations promulgated under the Code of Federal Regulations, REMIC trusts can only stay open for one (1) year past their start-up date, which in this instance, was April 16, 2004.  By the time this Assignment was executed by Sunlin and acknowledged by Perkins, the REMIC trust was closed (as of April 16, 2005) and non-existent and thus, could not have legally accepted the negotiation and transfer of the Plaintiff's mortgage loan and promissory note as memorialized in said *Plaintiff's Exhibit 2*, supra, thus, further constituting the perjury within the aforesaid document, as also noted in *In Re Saldivar*, Case No. 11-10689/Adversary No. 12-01010, U.S. Bkpt. Ct. S.D. TX on June 5, 2013 and was standing case law prior to the recording of the current documents (*Plaintiff's Exhibits 3 and 4*) also complained of herein;

(h.)     New York Estates, Powers & Trust § 7-2.4 states that failure to assign the Note and HELOC to the REMIC Trust by the Cut-off Date of April 1, 2004 renders the entire assignment void (not voidable). *Saldivar*, supra;

(i.)     The Plaintiffs further believe, allege and complain that Bank of America, N.A. instructed Sunlin and Perkins, as employees of said entity, to falsify the execution of this document, under color of authority, and caused said document to be recorded in the public record of Galveston County, Texas where it effectively remains today in its misrepresentative and perjurious form;

(j.)    Said document is being relied upon as part of the foregoing Defendants in this action to again, assert their rights to conduct a foreclosure sale, when in fact, there are deceptive issues of material fact at stake that the Defendants are fully aware of that a court of competent jurisdiction must consider.

(k.)    Further, the REMIC's own 424(b)(5) Prospectus indicates (under *"Advances"* at Pages S-8 and S-9):

> "The servicer will be required to make cash advances with respect to delinquent payments of principal and interest on the mortgage loans unless the servicer reasonably believes that the cash advances cannot be repaid from future payments on the applicable mortgage loans. These cash advances are only intended to maintain a regular flow of scheduled interest and principal payments on the certificates and are not intended to guarantee or insure against losses."

Thus, if indeed Defendant SPS was the bona fide servicer of this mortgage loan, it would have to show it complied with the terms and conditions of the Prospectus and make the required payments, which would have resulted in making the Certificate Holders of this REMIC whole as to the distribution of payments to the REMIC;

(l.)    Had the payments been paid to the Certificate Holders, which the Plaintiffs herein maintain should have been, the Certificate Holders would not be harmed; thus, there is no default and no need for foreclosure because the Plaintiffs do not have a contractual obligation to the servicer, which in this case, is claimed by Defendant SPS;

(m.)    Additionally, if the Certificate Holders have not been harmed, then none of the Defendants in this litigation would have standing to pursue an action against the Plaintiffs in the first place because they cannot show injury-in-fact, even as to the minimum particularization standards expressed in *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016);

(n.)    It is also highly likely, as was typical of most securitized loans at that time, that this account was insured and the investors have already been made whole and the attempts by the Defendants, and each of them, was to enrich themselves at the expense of the Plaintiffs and the equity in their Property by claiming themselves to be legitimate "Plaintiffs" in a foreclosure sale, contrived to deceive the Plaintiffs of their Property through illegitimate means; and

(o.)    Backdated or not, the actions surrounding the Assignment of Deed of Trust and Note (*Plaintiff's Exhibit 2*, supra) do not comport with the REMIC's own governing regulations and further demonstrate the willingness of Bank of America, N.A. and its employees to perpetrate a fraud upon the Plaintiffs and the public record of Galveston County, Texas.

19.    The Defendants in this action, jointly and severally, knew or should have known they continued to act *ultra vires* in attempting to foreclose and sell the Plaintiff's Property, including the mailing through the use of the United States Mails, notices to the Plaintiffs at their residence address claiming they had the right to collect a debt as a debt collector when they knew or should have known otherwise.

**B. The documents of record in the office of the Galveston County Clerk were improperly recorded out of sequence; thus, the actions of the alleged "substitute trustee" are invalid.**

20.    On March 3, 2022, Defendants HWA and Garcia caused a document to be publicly recorded that claimed the Defendants herein intend to sell the Plaintiff's Property on May 3, 2022.  A copy of this recorded Instrument is attached hereto as Plaintiff's Exhibit 3 and is incorporated by reference herein.

21.     As of the date of the recording of *Plaintiff's Exhibit 3*, supra, there was no recorded "Appointment of Substitute Trustee" appearing in the land records of the Galveston County Clerk, giving Defendant HWA authority to foreclose on the Plaintiff's Property.

22.     On March 21, 2022 (18 days later), Defendants HWA and Garcia, in concert with Defendant SPS, caused a document to be publicly recorded that claimed the Defendant SPS had appointed a new substitute trustee, attempting to give Defendants HWA and Garcia permission to conduct said May 3, 2022 sale. A copy of this recorded Instrument is attached hereto as Plaintiff's Exhibit 4 and is incorporated by reference herein.

23.     The document referenced herein as *Plaintiff's Exhibit 4*, supra, clearly identifies that after recording, the document was to be mailed to Defendant HWA, which by implication, is suspect because the document was executed in Salt Lake County, Utah by employees of Defendant SPS, who claimed they had "attorney-in-fact" status, when in fact, after due diligent search of the Galveston County land record, the Plaintiffs, with the assistance of the Galveston County Clerk's office, have been unable to locate a power of attorney within said public record, giving Defendant SPS the right to act on behalf of a closed REMIC trust.  Such a power of attorney should have been recorded prior to any of the named recorded instruments as referenced in *Plaintiff's Exhibits 3 and 4*, supra.

24.     All of the foregoing documents are suspect for fraud upon the Plaintiffs and the land record as they are misrepresentative of the real truth of the events that actually occurred throughout the history of this mortgage loan.

25.     The Plaintiffs further maintain that if the loan was indeed securitized, there is no indication that the MERS® System, an electronic platform now owned by Intercontinental Exchange, Inc. since October of 2018, was ever utilized as part of the securitization process; thus, a transfer or negotiation of a note and deed of trust never occurred through that electronic portal.

26.     The terms and conditions offered through the 424(b)(5) Prospectus to the Certificate Holders of the REMIC involved in this proceeding were offered under penalty of perjury under the Sarbanes-Oxley Act, promulgated under the Code of Federal Regulations at 17 CFR 210, 228, 229 et seq. and filings maintained by the U.S. Securities and Exchange Commission. By not transferring the Plaintiffs' note and deed of trust in the manner prescribed therein, the terms of the trust were violated and the transfer is void (not voidable).

**C. The Plaintiffs Have the Right to Challenge the Acts of the Defendants herein**

27.     There is standing case law that gives the Plaintiffs the right to challenge the Assignment of the Security Interest and assert their rights to do so herein.  *Miller et al v. Homecomings Financial, LLC et al*, Case 4:11-cv-04416, US Dist. Ct. S. D. TX, Houston Div. (2012).

28.     Texas recognizes a cognizable claim for wrongful foreclosure. *League City State Bank v. Mares*, 427 S.W. 2d 336 (Tex.Civ.App.-Houston [14th Dist.] (1968).

29.     Texas courts also permit debtors to sue for injunctive and declaratory relief to prevent wrongful foreclosure. *Martin v. New Century Mortgage Corporation*, 377 S.W. 3d 79, 2012 Tex.App. LEXIS 4705 at 3; *Wells Fargo Bank, N.A.v. Ballestas*, 355 S.W. 3d 187, 189-90 (Tex. App.-Houston [1st Dist.] (2011, no pet.); *Leavings v. Mills*, 175 S.W. 3d 301, 306 (Tex.App.-Houston [1st Dist.] 2004, no pet.); see also T.R.C.P. 736.11, which provides for an automatic stay of foreclosure proceedings upon the filing of an original proceeding in a court of competent jurisdiction contesting the right to foreclose).

30.     In the instant case, the Plaintiffs declare that the Defendant's lack of standing, due to the creation of the subsequent documents further complained about herein, and reliance on a fraudulent assignment to "manufacture standing" on paper, if proven to be true, would constitute interference with a deed of trust contract because the said Lender in the foreclosure action was not the real "lender" after all, making the Defendants, and each of them, non-compliant with the statutory notices as provided in Paragraphs 14 and 22 of the HELOC (*Ex. 1*, supra). See *Lido International, Inc. v. Lambeth*, 611 S.W. 2d 622 (Tex. 1981) and most significantly, for the present case, no "contractual standing" by the party seeking to foreclose. *Martin*, 2012 Tex.App. LEXIS 4705 at *3, as cited in *Miller v. Homecomings*, supra.

**D. As the result of the illicit Behaviors of the Defendants, and each of them, the Plaintiffs claim that the Notice of Substitute Trustee's Sale, which was recorded in the Public Record of Galveston County, Texas that is complained of herein, was Predicated on Fraud and Misrepresentation**

31.     The Plaintiffs do not deny that they willingly executed a deed of trust and note in favor of New Century Mortgage Corporation.  Said document was publicly recorded, previously noted as *Plaintiff's Exhibit 1*, supra.

32.     However, the Plaintiffs maintain that Defendant SPS has been acting without authority in claiming to be a servicer for a closed REMIC trust that could not have legally accepted the Plaintiff's Deed of Trust and Note as memorialized by a document created through perjury by Bank of America, N.A. employees, caused to be recorded in the public record of Galveston County, Texas in an attempt to create standing so that Defendant SPS could appoint a substitute trustee to liquidate the Plaintiff's Property and steal the Plaintiff's equity therein.

33.     Defendant SPS failed to sell the Plaintiff's Property within the two (2) year period as prescribed under Texas Law the first time it obtained the right to foreclose on the Plaintiff's Property; thus, if in fact there was an actual default as the Notice of Substitute Trustee's Sale maintains, Defendant SPS would have to go back and file another Rule 736 motion and start the foreclosure process over again.  The Notice served to the Plaintiffs herein does not comply with the foreclosure rules contained within the Texas Property Code and would thus constitute due process issues.

34.     The Plaintiffs believe and allege that the Defendants, and each of them, relied upon a document, *Plaintiffs Exhibit 2*, supra, to "patch" a "gap in the chain of title", which "may present a fact issue on the question of ownership" See *Martin*, at 12; *First Gibraltar Bank, FSB v. Farley*, 895 S.W.2d 425, 428-29 (Tex.App.-San Antonio 1995, writ denied); *Jernigan v. Bank One, Texas, N.A.*, 803 S.W.2d 774, 777 (Tex.App.-Houston [14th Dist.] 1991, no writ).

35.     There was no reference to where and when attorney-in-fact status was transferred to Defendant SPS, as the REMIC Trust was closed in 2005, having made no provisions for said authority to be transferred to Defendant SPS from Bank of America, N.A. as a servicer, sub-servicer or in the alternative, from the REMIC trust itself.  Bank of America, N.A. as a servicer, can only transfer whatever rights under contract with the REMIC trust were granted to it and cannot add additional rights to Defendant SPS that were not granted to it initially.

36.     In the instant case, the Plaintiffs were previously making payments to Defendant SPS upon demand, post-foreclosure, until the COVID-19 moratoriums took effect.  Defendant SPS, at all times and places, maintained that it was the mortgage loan servicer for the Plaintiff's mortgage loan, constantly demanding payment from the Plaintiffs.

37.     Prior to the institution of the previous foreclosure action, Defendant SPS held $10,633.82 in insurance payments that was supposed to reimburse the Plaintiffs for monies they expended in repairing the Property that was damaged by water line break in the home on February 3, 2010 and Bank of America transferred the payment to Defendant SPS on September 3, 2015.

38.     The Plaintiffs claim and allege that the hazard insurance payments due to them to reimburse them have been retained by Defendant SPS and Defendant SPS refuses to reimburse the Plaintiffs to their detriment.

39.     Defendant SPS has, for all intents and purposes, continued to declare itself as the mortgage loan servicer on the Plaintiff's mortgage loan and continues to attempt to collect money from the Plaintiffs, who claim that in fact, they are NOT in default as the proper party has not come forward with definitive proof that they are owed a sum certain, especially when relying upon a fraudulently-created document to assert standing to do so.

40.     Further, the Fifth Circuit Court of Appeals held in *Perry v. Stewart Title Co.*, 756 F. 2d 1197, 1208 (1985) that "servicers and assignees are debt collectors, and therefore are covered under the TDCA."

41.     The Plaintiffs further assert that SPS did not acquire this debt and claims to only be servicing the debt, by SPS's own admission.  SPS further sent letters to the Plaintiffs, as Defendant HWA did, that would constitute an attempt to collect a debt, not enforce the terms of their HELOC, which claimed the Plaintiffs owed them sums certain, with no full accounting of the charges and fees assessed whatsoever.

42.     In the alternative, if SPS claims that it acquired servicing rights to the Plaintiff's loan, it did so AFTER Bank of America, N.A., then operating as Countrywide Home Loans, Inc.,

14

transferred what it claimed was a defaulted loan to SPS; thus, making it a debt collector under

the TDCA. Countrywide Home Loans, Inc. attempted the foreclosure of the Plaintiff's property

in 2006 and at that time, asserted the Plaintiff's HELOC loan was in default; thus, SPS had pre-

vious knowledge of that allegation, despite the fact then-Bank of America, N.A., operating as

Countrywide Home Loans, Inc., failed to act on the Home Equity Foreclosure Order granted by

this Court for some unknown reason.

43.     On January 26, 2005, the Trustee for the REMIC filed an "Account Holder Certi-

fication" notice, declaring there were nine (9) Certificate Holders of record and further declared

that the REMIC was no longer required to file reports under Sections 13 and 15(d) of the Securi-

ties Exchange Act of 1934.  See the following link below from the SEC's own website:

**https://www.sec.gov/Archives/edgar/data/0001286823/000102024205000276/ms04c3.txt**

44.     A copy of the complete 424(b)(5) Prospectus may be found at the following link

below from the SEC's own website:

**https://www.sec.gov/Archives/edgar/data/1030442/000095013604001121/0000950136-04-**
**001121.txt**

While the Defendants may claim that the REMIC trust has no bearing on this matter, the Plain-

tiffs point out that Defendant SPS is claiming to represent a REMIC trust as its attorney-in-fact,

despite the fact the trust only has 9 Certificate Holders and has failed to show cause as to how

they were harmed by the Plaintiffs prior to their institution of a sale date without a hearing.

45.     The Plaintiffs claim that as a result of their loan allegedly being securitized, there

is no evidence that New Century Mortgage Corporation bought their loan back and further dis-

covery would be needed to ascertain whether the Certificate Holders were indeed made totally

whole based on insurance payouts, which were common around 2008 when the mortgage and secondary markets collapsed.

46.     Further, Defendant SPS is not mentioned by name anywhere in the aforementioned REMIC's prospectus.

47.     While the Defendants may argue that the Plaintiff's mortgage loan being securitized does not apply to them, the Plaintiffs maintain that the Certificate Holders have been paid in full and have been made whole and that the Defendants, and each of them, caused *Plaintiff's Exhibits 1 and 2*, supra, to be recorded in the public record in the office of the Galveston County Clerk with the express intent on stealing the Plaintiff's Property through an illegal foreclosure, splitting the profits and excess among themselves and refusing to compensate the Plaintiffs for insurance expenses and the Plaintiff's remaining equity vested with them in the Property.

## FIRST CAUSE OF ACTION — DECLARATORY RELIEF
## (AS TO ALL DEFENDANTS)

48.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

49.     An actual controversy has arisen and now exists between Plaintiffs and the Defendants, and each of them, regarding their respective rights and duties, in that Plaintiffs contend that the Defendants, and each of them, does not have the right to sell the Plaintiff's Property because it has not shown, demonstrated or fully proven itself to be a Holder of the Note nor have the specific rights to enforce it.  Thus, this court must determine the following:

(a.)     To determine whether the purported Notice of Substitute Trustee's Sale, namely, *Plaintiff's Exhibit 3*, supra, is invalid based on the failure to demonstrate standing by way of a properly-recorded Appointment of Substitute Trustee, namely, *Plaintiff's Exhibit 4*, supra, prior to the issuance of a recorded notice;

16

(b.)    To determine whether the purported Appointment of Substitute Trustee is invalid because there is no public record duly recorded in the office of the Galveston County Clerk giving Defendant SPS any power of attorney, limited or otherwise, to appoint anyone to stand in the stead of the current Trustee because both named documents in the previous paragraph were improperly recorded in the real property records of Galveston County, Texas;

(c.)    To determine whether the purported document relied upon in this matter, namely, *Plaintiff's Exhibit 2*, was previously executed by parties not authorized to claim any transfer or assignment of a deed of trust and promissory note in a timely manner according to SEC and other government regulations and thus the assignment and the transfer is purports to memorialize, is void by law;

(d.)    To determine that as the result of the actions of the Defendants, and each of them, the Notice of Substitute Trustee's Sale is void on its face and the combination of the mis-recorded documents constitutes slander of the Plaintiff's title to their Property;

(e.)    To determine whether the Defendants, and each of them, sent notices which held each out to be a debt collector, attempting to collect a debt that each was not legally authorized to collect and in so doing, misrepresented the character and status of a debt; and

(f.)    To determine under Texas Law whether Plaintiff's Exhibits 2, 3 and 4 are slanderous to the Plaintiff's chain of title and need to be stricken from the public record.

50.    As a result of the actions of the Defendants, and each of them, Plaintiffs have suffered damages and seek declaratory relief that Defendant's purported power of sale is void and has no force or effect against the Property.  Plaintiff further seeks all monetary damages and relief to the maximum extent permitted by law.

## SECOND CAUSE OF ACTION — SLANDER OF TITLE

## (AS TO ALL DEFENDANTS)

51.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

52.     "Slander of title" consists of a "false and malicious statement made in disparage-ment of a person's title to property which causes special damages." *Marrs & Smith P'ship v. D.K. Boyd Oil & Gas Co.*, 223 S.W.3d 1, 20 (Tex. App.—ElPaso 2005, pet. denied); see also 3 Dan B. Dobbs, Paul T. Hayden & Ellen M. Bublick, *The Law Of Torts* § 656, at 617 (2d ed. 2011) (describing the tort as a form of injurious falsehood in which the defendant casts doubt on the plaintiff's title). Special damages are simply economic damages. *In re Lipsky*, 460 S.W.3d 579,592 n.11(Tex.2015).

53.     The Defendants, and each of them, did in fact cause Plaintiff's Exhibits 3 and 4 to be publicly recorded in reverse order in an attempt to violate the Plaintiff's due process right to a hearing and instead, took it upon themselves to slop through the recording of said paperwork, with the intent to steal the Plaintiff's Property, slander the Plaintiff's title to their Property, which, even if the Defendants were to prevail in an action against the Plaintiffs, the Plaintiffs could not sell their Property to mitigate the Defendant's damages because of the publicly-rec-orded false and misrepresentative documents that currently exist in the public record affecting the Plaintiffs' chain of title to their Property.

54.     The Plaintiffs also note that any subsequent Trustee's Deed issued upon Sale would be looked upon as suspect by title insurance companies, who may consider the Plaintiffs' Property uninsurable due to the slanderous actions committed by the Defendants and each of them.  Thus, the Plaintiffs believe and allege impairment of vendibility of their title.

55.     As a result of the actions of the Defendants, and each of them, Plaintiffs have suffered special damages due to their title being slandered and seek a determination and finding of such damages has occurred and to give the Plaintiff's relief to the maximum extent permitted by law.

### THIRD CAUSE OF ACTION —
### VIOLATIONS OF THE TEXAS FINANCE CODE
### (AS TO ALL DEFENDANTS)

56.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

57.     As to Section 392.304(a)(8), which stipulates (in pertinent part):

> (a) Except as otherwise provided by this section, in debt collection or obtaining information concerning a consumer, a debt collector may not use a fraudulent, deceptive, or misleading representation that employs the following practices: (8) misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding;

The Plaintiffs claim and allege that the Defendants, and each of them, sent letters to the Plaintiffs, claiming that they were owed sums certain while failing upon request to validate said debts, all the while holding themselves out to be a debt collector while failing to provide documented information concerning the nature, character and status of the mortgage debt.

58.     As to Section 392.304(a)(14), which stipulates (in pertinent part):

> (a) Except as otherwise provided by this section, in debt collection or obtaining information concerning a consumer, a debt collector may not use a fraudulent, deceptive, or misleading representation that employs the following practices: (14) representing falsely the status or nature of the services rendered by the debt collector or the debt collector's business;

The Plaintiffs claim and allege that the Defendants, and each of them, represented by and through their notices, both delivered by United States Mails and through their recordings in the public record, misrepresented their authority to the Plaintiffs in that they were allowed to

19

conduct a sale of the Plaintiff's Property when in fact, the erroneous public records said otherwise.

59.     As to Section 392.304(a)(19), which stipulates (in pertinent part):

> (a) Except as otherwise provided by this section, in debt collection or obtaining information concerning a consumer, a debt collector may not use a fraudulent, deceptive, or misleading representation that employs the following practices: (19) using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer.

The Defendants, and each of them, sent notices claiming sums certain that were not validated upon the Plaintiffs' request and then causing to be created publicly-recorded documents which declared to the consuming public that the Plaintiffs' Property was falsely advertised for sale, when in fact the Defendants, and each of them, should have known that they had no authority to conduct such sale.

60.     Wherein the Plaintiffs seek injunctive relief and ask this Court to restrain the Defendants, and each of them, in violation of this Chapter and to assess damages and costs as statutorily mandated by this Chapter.

## FIFTH CAUSE OF ACTION — INJUNCTIVE RELIEF
## (AS TO ALL DEFENDANTS)

61.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

62.     As to the actions of the Defendants, and each of them, the Plaintiffs are entitled to injunctive relief as provided under the Laws of the State of Texas, as further stipulated in the Application for a Temporary Restraining Order as filed with this case, based on the previous cause of action.

20

63.     The Plaintiffs maintain they are entitled to exemplary and punitive damages for the Defendants' misleading and deceptive conduct in the sum to be determined at trial.

## SIXTH CAUSE OF ACTION — CANCELLATION AND EXPUNGEMENT OF CERTAIN RECORDS UNDER THE TEXAS CIVIL PRACTICE AND REMEDIES CODE § 16.033
## (AS TO SPECIFIC DOCUMENTS)

64.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

65.     The code allows the Plaintiffs to ask this Court to declare that the foregoing documents are facially and technically deficient and have caused slander to the Plaintiffs' title to their Property, and according to Section 2 of this Act, as amended, the law applies to all documents complained of herein as *Plaintiff's Exhibit 2* was recorded before September 1, 2007 and a challenge to it remains in effect according to statute and the balance of the documents fall within the balance of the statute, allowing for the Plaintiff's to request this Court to act accordingly.

66.     The Plaintiffs ask this Court for a determination that the documents are fraudulent, misrepresentative and deceptive as to their falsity and to cancel said documents and further issue an order to the Clerk of Galveston County, Texas to strike these documents from the public record upon the Order of this Court.

## SEVENTH CAUSE OF ACTION — REQUEST FOR FULL ACCOUNTING
## (AS TO ALL DEFENDANTS)

67.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

21

68.     On June 30, 2021, the Plaintiffs sent Defendant HWA and its agent, Defendant

Anthony Adan Garcia a debt validation letter.  Since that date, no response has been given as to

what the Plaintiffs allegedly owe to this debt collector, who identified themselves as such to the

Plaintiff's, demanding a sum certain from them as a condition to avoid foreclosure.  Since the

law firm did not respond to the Plaintiff's request, the Plaintiffs request this Court to order a full

and complete accounting of:

> (a.)     every payment made by the Plaintiffs;
>
> (b.)     all escrow payments paid into that account and applied;
>
> (c.)     every payment made by Defendant SPS as part of the Advances

section of the 424(b)(5) Prospectus; and

> (d.)     every default insurance payment paid to the REMIC trust in an effort

to make whole the 9 certificate holders remaining as of the filing date of the REMIC trust that it

is no longer required to report any accounting to the U.S. Securities and Exchange Commission.


## V. REQUEST FOR TRIAL BY JURY

69.     The Plaintiffs herein request a trial by jury.


## VI. PRAYER FOR RELIEF

70.     WHEREFORE, PREMISES CONSIDERED, the Plaintiffs respectfully pray that

the Defendants be cited to appear and answer herein and that upon final hearing, this Court grant

all relief as set forth in this Complaint, including but not limited to a refund of all money

tendered to Defendants since December 4, 2003; all other economic and consequential damages;

exemplary damages; attorney's fees and cost of suit; as well as such other and further relief, at law or in equity, to which the Plaintiffs may show themselves to be justly entitled.

71.     WHEREFORE, the Plaintiffs further pray for this Court to direct the Clerk of Galveston County, Texas to procure a certified copy of *Plaintiff's Exhibits 2, 3 and 4* and direct said Clerk to turn said documents over to the Galveston County District Attorney for further investigation and criminal referral for prosecution under Texas Penal Code § 37.03(a)(1)(2) and § 37.03(b).

Respectfully submitted,
James Andersen Attorney

*/s/ James M. Andersen*
James M. Andersen
Texas Bar No. 01165850
James Andersen Attorney
17041 El Camino Real
Suite 204
Houston, TX  77058
Phone: (281) 488-2800
Fax: (281) 480-4851
Email: jandersen.law @gmail.com
Attorney for Plaintiffs
TIMOTHY L. BOURGEOIS and
GWEN A. BOURGEOIS

## VERIFICATION

STATE OF TEXAS                                    §
                                                 §
COUNTY OF GALVESTON                               §


BEFORE ME, the undersigned authority, personally appeared Timothy L. Bourgeois and Gwen A. Bourgeois, who, on oath, stated that the statements made in the foregoing **PLAINTIFF'S ORIGINAL VERIFIED COMPLAINT AGAINST DEFENDANTS FOR DECLARATORY RELIEF, SLANDER OF TITLE, VIOLATIONS OF THE TEXAS FINANCE CODE, FOR INJUNCTIVE RELIEF AND TO EXPUNGE DOCUMENTS FROM THE PUBLIC RECORD AND REQUEST FOR FULL ACCOUNTING** are within their personal knowledge and are true and correct.

_____
Timothy L. Bourgeois

_____
Gwen A. Bourgeois


SUBSCRIBED AND SWORN TO BEFORE ME on this the 28 day of April, 2022, to certify which witness my hand and seal of office.

_____
Notary Public, State of Texas

Judy S Herring
My Commission Expires
10/06/2023
ID No. 128764737

24

# EXHIBIT "1"

Nov.18. 2003 4:32PM    Republic Wire Dept

GAC 2003085140 21 PGS

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

FILED BY
FIDELITY NATIONAL TITLE
4400181

Return To:

**NEW CENTURY MORTGAGE CORPORATION**
**18400 VON KARMAN, SUITE 1000**
**IRVINE, CA 92612**

Prepared By:

**NEW CENTURY MORTGAGE CORPORATION**
**18400 VON KARMAN, SUITE 1000**
**IRVINE, CA 92612**

——————— [Space Above This Line for Recording Data] ———————

THIS SECURITY INSTRUMENT SECURES AN EXTENSION OF CREDIT AS DEFINED BY
SECTION 50(a)(6), ARTICLE XVI OF THE TEXAS CONSTITUTION.

# TEXAS HOME EQUITY SECURITY INSTRUMENT
## (First Lien)

This Security Instrument is not intended to finance Borrower's acquisition of the Property.

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections
3, 10, 12, 17, 19, 20 and 21. Certain rules regarding the usage of words used in this document are also
provided in Section 15.

(A) "Security Instrument" means this document, which is dated **November 18, 2003**,
together with all Riders to this document.

(B) "Borrower" is
**TIMOTHY L.BOURGEOIS AND WIFE, GWEN A. BOURGEOIS, BY VIRTUE OF DEED FILED**
**FOR RECORD UNDER GALVESTON COUNTY CLERK'S FILE NO. 9718383**

Borrower is the grantor under this Security Instrument.
(C) "Lender" is
**NEW CENTURY MORTGAGE CORPORATION**
Lender is a **CORPORATION**
organized and existing under the laws of **CALIFORNIA**

TEXAS HOME EQUITY SECURITY INSTRUMENT (First Lien)-Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT

▓▓-8038(TX) (0010)

Form 3044.1 1/01

Page 1 of 19    Initials

VMP MORTGAGE FORMS - (800)521-7291

Nov. 18, 2003  4:32PM    Republic Wire Dept.                                No 7657   P. 22/51

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

Lender's address is 18400 VON KARMAN, SUITE 1000
IRVINE, CA 92612
Lender includes any holder of the Note who is entitled to receive payments under the Note. Lender is the
beneficiary under this Security Instrument.
(D) "Trustee" is
ELDON L. YOUNGBLOOD                                              . Trustee's address is

1700 PACIFIC AVENUE, SUITE 4100, DALLAS, TEXAS 75201
(E) "Note" means the promissory note signed by Borrower and dated November 18, 2003
The Note states that Borrower owes Lender One Hundred Seventy-Two Thousand and No/100 --
-------------------------------------------------------- Dollars
(U.S. $ 172,000.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than  December 1, 2033
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Extension of Credit" means the debt evidenced by the Note, as defined by Section 50(a)(6), Article
XVI of the Texas Constitution and all the documents executed in connection with the debt.
(H) "Riders" means all riders to this Security Instrument that are executed by Borrower. The following
riders are to be executed by Borrower [check box as applicable]:

☐ Texas Home Equity Condominium Rider
☒ Texas Home Equity Planned Unit Development Rider          ☐ Other:

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by
any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property;
(iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or
condition of the Property.
(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time,
or any additional or successor legislation or regulation that governs the same subject matter. As used in this
Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a
"federally related mortgage loan" even if the Extension of Credit does not qualify as a "federally related
mortgage loan" under RESPA.

-8036(TX) (0010)                  Page 2 of 17          Initials           Form 3044.1  1/01

Nov 18, 2003 4:33PM  Republic Wire Dept.                    No 7657  P. 22/51

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

(F) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**
This Security Instrument secures to Lender: (i) the repayment of the Extension of Credit, and all extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described Property located in the **COUNTY**                              of **HARRIS**                                               .

[Type of Recording Jurisdiction]                            [Name of Recording Jurisdiction]

**SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.**

Parcel ID Number: **517700020018000**                                    which currently has the address of
**1804 N. MISSION CIRCLE**                                                                                [Street]
**FRIENDSWOOD**                                                              [City], Texas  **77546**        [Zip Code]
("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the Property, and all easements, appurtenances, and fixtures now or hereafter a part of the Property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property"; provided however, that the Property is limited to homestead property in accordance with Section 50(a)(6)(H), Article XVI of the Texas Constitution.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may

-8055(TX) (0010)                        Page 3 of 17                              Form 3044.1  1/01

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

require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Extension of Credit current. Lender may accept any payment or partial payment insufficient to bring the Extension of Credit current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Extension of Credit current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; and (c) premiums for any and all insurance required by Lender under Section 5. These items are called "Escrow Items." At origination or at any time during the term of the Extension of Credit, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish

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

to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

-6066(TX) (0010)                                      Page 6 of 15          Initials ____          Form 3044 1 1/01

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

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Extension of Credit.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Extension of Credit. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Extension of Credit, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

-6836(TX) (0012)                    Page 6 of 17          Initials          Form 3044.1  1/01

Case 3:22-cv-00146   Document 1-4   Filed on 05/06/22 in TXSD   Page 32 of 58
Nov 18, 2003  4:36PM   Republic Wire Dept                      No 7657   P 27/51

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

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 21 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower now occupies and uses the Property as Borrower's Texas homestead and shall continue to occupy the Property as Borrower's Texas homestead for at least one year after the date of this Security Instrument, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower's actions shall constitute actual fraud under Section 50(a)(6)(n), Article XVI of the Texas Constitution and Borrower shall be in default and may be held personally liable for the debt evidenced by the Note and this Security Instrument if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan or any other action or inaction that is determined to be actual fraud. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as a Texas homestead, the representations and warranties contained in the Texas Home Equity Affidavit and Agreement, and the execution of an acknowledgment of fair market value of the property as described in Section 27.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien

-6036(TX) (0010)                     Page 7 of 17         Initials         Form 3044.1  1/01

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

which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so  It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9. No powers are granted by Borrower to Lender or Trustee that would violate provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution or other Applicable Law.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails

-8036(TX) (0010)                    Page 8 of 1                    Form 3044.1  1/01

Case 3:22-cv-00146 Document 1-4 Filed on 05/06/22 in TXSD Page 34 of 58
Nov 18, 2003 4:37PM Republic Wire Dept No 7657 P 29/73

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

to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding which is not commenced as a result of Borrower's default under other indebtedness not secured by a prior valid encumbrance against the homestead, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

11. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

12. Joint and Several Liability; Security Instrument Execution; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any person who signs this Security Instrument but does not execute the Note: (a) is signing this Security Instrument only to mortgage, grant and convey the person's interest in the Property under the terms of this Security Instrument or to comply with the requirements of Section 50(a)(6)(A), Article XVI of the Texas Constitution; (b) is not obligated to pay the sums secured by this Security Instrument and is not to be considered a guarantor or surety; (c) agrees that this Security Instrument establishes a voluntary lien on the homestead and constitutes the written agreement evidencing the consent of each owner and each owner's spouse, and (d) agrees that Lender and Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of the Note.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

13. Extension of Credit Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

Nov 18 2003 4:38PM Republic Wire Dept. No 7692 P. 38/51

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

If the Extension of Credit is subject to a law which sets maximum Extension of Credit charges, and that law is finally interpreted so that the interest or other Extension of Credit charges collected or to be collected in connection with the Extension of Credit exceed the permitted limits, then: (a) any such Extension of Credit charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

14. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail (but, by certified mail if the notice is given pursuant to Section 19) to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

15. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the laws of Texas. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

16. Borrower's Copies. Borrower shall be given at the time this Extension of Credit is made, a copy of all documents signed by Borrower related to the Extension of Credit.

17. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law

-8036(TX) (0010)     Page 10 of 13     Form 3044.1  1/01

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

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses, insofar as allowed by Section 50(a)(6), Article XVI of the Texas Constitution, incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

19. Sale of Note; Change of Loan Servicer; Notice of Grievance; Lender's Right-to-Comply. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Extension of Credit is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 21 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.

-8036(TX) (0010)                    Page 11 of 17              Initials          Form 3044.1  1/01

Case 3:22-cv-00146   Document 1-4   Filed on 05/06/22 in TXSD   Page 37 of 58

Nov 18 2003 4:40PM   Republic Wire Dept.   No 7697   P 37/51

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

It is Lender's and Borrower's intention to conform strictly to provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution.

All agreements between Lender and Borrower are hereby expressly limited so that in no event shall any agreement between Lender and Borrower, or between either of them and any third party, be construed not to allow Lender a reasonable time to comply, as provided in this Section 19, with Lender's obligations under the Extension of Credit. Borrower understands that the Extension of Credit is being made on the condition that Lender shall have a reasonable time to comply, with any of the provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution. As a precondition to taking any action premised on failure of Lender to comply, Borrower will advise Lender of the noncompliance by a notice given as required by Section 14, and will give Lender a reasonable time to comply. Borrower will cooperate in reasonable efforts to effectuate any compliance. Only after Lender has received said notice, has had a reasonable time to comply, and Lender has failed to comply, shall all principal and interest be forfeited by Lender, as required by Section 50(a)(6)(Q)(x), Article XVI of the Texas Constitution in connection with failure by Lender to comply with its obligations under this Extension of Credit.

In the event that, for any reason whatsoever, any obligation of Borrower or of Lender pursuant to the terms or requirements hereof or of any other loan document shall be construed to violate any of the provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution, then any such obligation shall be subject to the provisions of this Section 19, and the document shall be automatically reformed, without the necessity of the execution of any amendment or new document, so that Borrower's or Lender's obligation shall be modified to conform to the Texas Constitution, and in no event shall Borrower or Lender be obligated to perform any act, or be bound by any requirement which would conflict therewith.

All agreements between Lender and Borrower are expressly limited so that any interest, Extension of Credit charge or fee collected or to be collected (other than by payment of interest) from Borrower, any owner or the spouse of any owner of the Property in connection with the origination, evaluation, maintenance, recording, insuring or servicing of the Extension of Credit shall not exceed, in the aggregate, the highest amount allowed by Applicable Law.

It is the express intention of Lender and Borrower to structure this Extension of Credit to conform to the provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution. If, from any circumstance whatsoever, any promise, payment, obligation or provision of the Note, this Security Instrument or any other loan document involving this Extension of Credit transcends the limit of validity prescribed by Applicable Law, then any promise, payment, obligation or provision shall be reduced to the limit of such validity, or eliminated as a requirement if necessary for compliance with such law, and such document shall be automatically reformed without the necessity of the execution of any new amendment or new document.

Lender's right-to-comply as provided in this Section 19 shall survive the payoff of the Extension of Credit. The provision of this Section 19 will supersede any inconsistent provision of the Note or this Security Instrument.

20. Hazardous Substances. As used in this Section 20: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

-3046(TX) (0310)                    Page 18 of 17                    Initials                    Form 3046.1   1/01

Nov 18 2003 4:41PM Republic Title Dept NO 7037 P. 37/51

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

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products)

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law Nothing herein shall create any obligation on Lender for an Environmental Cleanup

21. **Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Insofar as allowed by Section 50(a)(6), Article XVI of the Texas Constitution, Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 21, including, but not limited to, court costs, reasonable attorneys' fees and costs of title evidence.**

The lien evidenced by this Security Instrument may be foreclosed upon only by a court order. **Lender may, at its option, follow any rules of civil procedure promulgated by the Texas Supreme Court for expedited foreclosure proceedings related to the foreclosure of liens under Section 50(a)(6), Article XVI of the Texas Constitution ("Rules"), as amended from time to time, which are hereby incorporated by reference. The power of sale granted herein shall be exercised pursuant to such Rules, and Borrower understands that such power of sale is not a confession of judgment or a power of attorney to confess judgment or to appear for Borrower in a judicial proceeding.**

22. **Power of Sale. It is the express intention of Lender and Borrower that Lender shall have a fully enforceable lien on the Property It is also the express intention of Lender and Borrower that Lender's default remedies shall include the most expeditious means of foreclosure available by law. Accordingly, Lender and Trustee shall have all the powers provided herein except insofar as may be limited by the Texas Supreme Court. To the extent the Rules do not specify a procedure for the exercise of a power of sale, the following provisions of this Section 22 shall apply, if Lender invokes the power of sale. Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice of sale to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public vendue. The sale must begin at the time stated in**

-3036(TX) (0010)                              Page 16 of 17                              Form 3044.1  1/01

Nov 18 2003 4:42PM Republic Wire Dept No 7057 P. 34/51

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

in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale. In the event of any conflict between such procedure and the Rules, the Rules shall prevail, and this provision shall automatically be reformed to the extent necessary to comply.

Trustee shall deliver to the purchaser who acquires title to the Property pursuant to the foreclosure of the lien a Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, court costs and reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

**23. Release.** Within a reasonable time after termination and full payment of the Extension of Credit, the Lender shall cancel and return the Note to the owner of the Property and give the owner, in recordable form, a release of the lien securing the Extension of Credit or a copy of an endorsement of the Note and assignment of the lien to a lender that is refinancing the Extension of Credit. Owner shall pay only recordation costs. **OWNER'S ACCEPTANCE OF SUCH RELEASE, OR ENDORSEMENT AND ASSIGNMENT, SHALL EXTINGUISH ALL OF LENDER'S OBLIGATIONS UNDER SECTION 50(a)(6), ARTICLE XVI OF THE TEXAS CONSTITUTION.**

**24. Non-Recourse Liability.** Lender shall be subrogated to any and all rights, superior title, liens and equities owned or claimed by any owner or holder of any liens and debts outstanding immediately prior to execution hereof, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

Subject to the limitation of personal liability described below, each person who signs this Security Instrument is responsible for ensuring that all of Borrower's promises and obligations in the Note and this Security Instrument are performed.

Borrower understands that Section 50(a)(6)(C), Article XVI of the Texas Constitution provides that the Note is given without personal liability against each owner of the Property and against the spouse of each owner unless the owner or spouse obtained this Extension of Credit by actual fraud. This means that, absent such actual fraud, the Lender can enforce its rights under this Security Instrument solely against the Property and not personally against the owner of the Property or the spouse of an owner.

If this Extension of Credit is obtained by such actual fraud, then, subject to Section 12, Borrower will be personally liable for the payment of any amounts due under the Note or this Security Instrument. This means that a personal judgment could be obtained against Borrower, if Borrower fails to perform Borrower's responsibilities under the Note or this Security Instrument, including a judgment for any deficiency that results from Lender's sale of the Property for an amount less than is owing under the Note, thereby subjecting Borrower's other assets to satisfaction of the debt.

If not prohibited by Section 50(a)(6)(C), Article XVI of the Texas Constitution, this Section 24 shall not impair in any way the lien of this Security Instrument or the right of Lender to collect all sums due under the Note and this Security Instrument or prejudice the right of Lender as to any covenants or conditions of the Note and this Security Instrument.

**25. Proceeds.** Borrower has not been required to apply the proceeds of the Extension of Credit to repay another debt except a debt secured by the Property or a debt to another lender.

-8036(TX) (0010)     Page 14 of 17     Form 3044.1  1/01

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

**26. No Assignment of Wages.** Borrower has not assigned wages as security for the Extension of Credit.

**27. Acknowledgment of Fair Market Value.** Lender and Borrower have executed a written acknowledgment as to the fair market value of Borrower's Property on the date the Extension of Credit is made.

**28. Substitute Trustee; Trustee Liability.** All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

**29. Acknowledgment of Waiver by Lender of Additional Collateral.** Borrower acknowledges that Lender waives all terms in any of Lender's loan documentation (whether existing now or created in the future) which (a) create cross default; (b) provide for additional collateral; and/or (c) create personal liability for any Borrower (except in the event of actual fraud), for the Extension of Credit. This waiver includes, but is not limited to, any (a) guaranty; (b) cross collateralization; (c) future indebtedness; (d) cross default, and/or (e) dragnet provisions in any loan documentation with Lender.

-8036(TX) (0010)    Page 16 of 17    Initials    Form 3044 1 1/01

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

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

[DO NOT SIGN IF THERE ARE BLANKS LEFT TO BE COMPLETED IN THIS DOCUMENT. THIS DOCUMENT MUST BE EXECUTED AT THE OFFICE OF LENDER, AN ATTORNEY AT LAW OR A TITLE COMPANY. YOU MUST RECEIVE A COPY OF THIS DOCUMENT AFTER YOU HAVE SIGNED IT.]

YOU MAY, WITHIN 3 DAYS AFTER CLOSING, RESCIND THIS EXTENSION OF CREDIT WITHOUT PENALTY OR CHARGE.

_____        _____ (Seal)
                                  TIMOTHY L. BOURGEOIS          -Borrower

_____        _____ (Seal)
                                  GWEN A. BOURGEOIS             -Borrower

_____ (Seal)         _____ (Seal)
              -Borrower                         -Borrower

_____ (Seal)         _____ (Seal)
              -Borrower                         -Borrower

_____ (Seal)         _____ (Seal)
              -Borrower                         -Borrower

-6008(TX) (0010)                 Page 16 of 17              Form 3044.1  1/01

Case 3:22-cv-00146 Document 1-4 Filed on 05/06/22 in TXSD Page 42 of 58

Nov. 18. 2003 4:43PM Republic Wire Dept. No. 7657 P. 37/5

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

**STATE OF TEXAS**
County of *Harris*

Before me *Kristen Kaye Thelander* on this day personally appeared

*Timothy L. + Gwen A. Bourgeois*

known to me (or proved to me on the oath of
or through *TDL Photo TD* ) to be the person whose name is subscribed to the
foregoing instrument and acknowledged to me that he/she/they executed the same for the purposes and
consideration therein expressed.

Given under my hand and seal of office this *15th* day of *November* *2003*

(Seal)

*K Kaye*

Notary Public

KRISTEN KAYE THELANDER
Notary Public, State of Texas
Commission Expires 01-28-2006

My Commission Expires:

-9038(TX) (0010)                    Page 17 of 17                    Form 3044.1 1/01

Case 3:22-cv-00146 Document 1-4 Filed on 05/06/22 in TXSD Page 43 of 58

Nov. 18. 2003 4:44PM Republic Wire Dept. No. 7657 P. 36/31

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

# TEXAS HOME EQUITY
# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **15th** day of **November** **2003** , and is incorporated into and shall be deemed to amend and supplement the Security Instrument of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to

**NEW CENTURY MORTGAGE CORPORATION**

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

**1004 N. MISSION CIRCLE, FRIENDSWOOD, TX 77546**

[Property Address]

The property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in covenants, conditions, and restrictions filed in the Real Property records of the county in which the property is located (the "Declaration"). The property is a part of a planned unit development described in the Declaration (the "PUD"). The property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest. Insofar as permitted by Section 50(a)(6)(H), Article XVI of the Texas Constitution, "homestead" shall include the elements of the property described by this Rider.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the: (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, from which Lender requires insurance, then:

(i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the property; and

(ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

**TEXAS HOME EQUITY PLANNED UNIT DEVELOPMENT RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

-8057(TX) (0010) Form 3180.6011/01
Page 1 of 3          Initials
VMP MORTGAGE FORMS - (800)521-7291

'Nov 18. 2003 4:47PM Republic Wire Dept No. 7657 P. 39/51

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

What Lender requires as a condition of this waiver can change during the term of the loan

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the property, or to common areas and facilities of the PUD, any proceeds payable to Borrower shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 10.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the property or consent to:

(i)   the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain;

(ii)   any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender;

(iii)   termination of professional management and assumption of self-management of the Owners Association; or

(iv)   any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender, if allowed by applicable law, may pay them. Any amounts disbursed by Lender under this Paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

-8057(TX) (001 09)          Page 2 of 6          Initials          Form 3150.44 1/01

Nov. 18, 2003 4:48PM Republic Wire Deal No 7657 P. 46/91

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

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

[DO NOT SIGN IF THERE ARE BLANKS LEFT TO BE COMPLETED IN THIS DOCUMENT. THIS DOCUMENT MUST BE EXECUTED AT THE OFFICE OF THE LENDER, AN ATTORNEY AT LAW OR A TITLE COMPANY. YOU MUST RECEIVE A COPY OF THIS DOCUMENT AFTER YOU HAVE SIGNED IT.]

_____ (Seal)          _____ (Seal)
TIMOTHY L. BOURGEOIS    -Borrower       GWEN A. BOURGEOIS      -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                              -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                              -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                              -Borrower

5097(TX) (0010)              Page 3 of 3              Form 3150.44 1/01

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

## *"EXHIBIT A"*

Lot Eighteen(18), in Block Two (2), of the Final Plat of MISSION ESTATES SUBDIVISION, SECTION THREE (3), in Galveston County, Texas, according to map or plat thereof, recorded in Volume 18, Page 91 of the Map Records in the office of the County Clerk of Galveston County, Texas

**FILED AND RECORDED**
OFFICIAL PUBLIC RECORDS OF REAL PROPERTY

*Mary Ann Daigle*

2003 DEC 04  11:05 AM 2003086140
ROSS_M $49.00
Mary Ann Daigle ,COUNTY CLERK
GALVESTON, TEXAS

# EXHIBIT "2"

GAC 2006069280 3 pgs

ASSIGNMENT OF NOTE
AND DEED OF TRUST

Loan No
BBWCDF No 20060031404739
Investor/Loan Type EQUITY

| | |
|---|---|
| Date of Assignment | Effective July 28, 2006 |
| Assignor | NEW CENTURY MORTGAGE CORPORATION |
| Assignee | DEUTSCHE BANK NATIONAL TRUST COMPANY, TRUSTEE, ON BE-HALF OF THE CERTIFICATEHOLDERS OF MORGAN STANLEY ABS CAPITAL I INC TRUST 2004-NC3, MORTGAGE PASS THROUGH CERTIFICATES, SERIES 2004-NC3 |
| Assignee's Mailing Address (including county) | 3 PARK PLAZA, 16TH FLOOR IRVINE, CA 92714 |

NOTE and DEED OF TRUST--

| | |
|---|---|
| Maker/Grantor | GWEN A BOURGEOIS TIMOTHY L BOURGEOIS |
| Date | November 15, 2003 |
| Original Amount | $ 172,000 00 |
| Payee | NEW CENTURY MORTGAGE CORPORATION |
| Trustee | ELDON L YOUNGBLOOD |
| Recording Information (including county) | CLERK'S FILE NO 2003086140 (GALVESTON) |

Property (including any improvements) Subject to Deed of Trust

LOT EIGHTEEN (18), IN BLOCK TWO (2), OF THE FINAL PLAT OF MISSION ESTATES SUBDIVISION, SECTION THREE (3), IN GALVESTON COUNTY, TEXAS, ACCORDING TO MAP OR PLAT THEREOF, RECORDED IN VOLUME 18, PAGE 91 OF THE MAP RECORDS IN THE OFFICE OF THE COUNTY CLERK OF GALVESTON COUNTY, TEXAS

**\*ASSG20060031404**

ASSG20060031404739

C \DOCUME~1\gloria.h\LOCALS~1\Temp\{4D697C3C-8A67-4AA2-9BB9-C93AE9B46A1A} rpi -
(03/07/06) / Ver-3

Page 1 of 2

ASSIGNMENT OF NOTE
AND DEED OF TRUST

Loan No ▮▮▮▮▮▮
BBWCDF No 20060031404739
Investor/Loan Type EQUITY

WHEREAS, on the date of assignment indicated above, for value received, Holder of the Note and Deed of Trust transferred and assigned each to Assignee, and warranted that the lien was valid against the property in the priority indicated, and

WHEREAS, the Holder of the Note and Deed of Trust and the Assignee desire to evidence and memorialize such transfer and assignment and warranty by this document,

NOW THEREFORE, for value received Holder of the Note and Deed of Trust does hereby evidence and memorialize its transfer and assignment of the Note and Deed of Trust to Assignee on the date of assignment indicated above

When the context requires, singular nouns and pronouns include the plural

NEW CENTURY MORTGAGE CORPORATION

BY _____
ITS   DAVID SUNLIN, SR VICE PRESIDENT

CORPORATE ACKNOWLEDGMENT

State of **TEXAS** §
County of **COLLIN** §

Before me, the undersigned Notary Public, on this day personally appeared **DAVID SUNLIN, SR VICE PRESIDENT**, who is the **SR VICE PRESIDENT** of NEW CENTURY MORTGAGE CORPORATION, a corporation, on behalf of said corporation, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed

Given under my hand and seal of office this 22 day of September , 2006

My Commission Expires

July 21, 2009

_____
Notary Public Signature
Christie G Perkins

_____
Printed Name of Notary Public

PREPARED BY AND AFTER RECORDING RETURN TO BBWCDF
15000 Surveyor Boulevard Suite 100, Addison, Texas 75001

C:\DOCUME~1\glorrach\LOCALS~1\Temp\{4D697C3C-8A67-4AA2-9B89-C93AE9B46A1A}.rpt -
(03/07/06) / V.r-3

CHRISTIE G PERKINS
My Commission Expires
July 21, 2009

Page 2 of 2

FILED AND RECORDED
OFFICIAL PUBLIC RECORDS OF REAL PROPERTY

*Mary Ann Daigle*

2006 OCT 11  09:47 AM 2006069280
LILLY $20.00
Mary Ann Daigle ,COUNTY CLERK
GALVESTON, TEXAS

# EXHIBIT "3"

<u>NOTICE OF SUBSTITUTE TRUSTEE'S SALE</u>

**GALVESTON County**
**Deed of Trust Dated:** November 15, 2003
**Amount:** $172,000.00
**Grantor(s):** GWEN A BOURGEOIS and TIMOTHY L BOURGEOIS
**Original Mortgagee:** NEW CENTURY MORTGAGE CORPORATION
**Current Mortgagee:** DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE, IN TRUST FOR THE REGISTERED HOLDERS OF MORGAN STANLEY ABS CAPITAL I INC. TRUST 2004-NC3, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2004-NC3
**Mortgagee Servicer and Address:** c/o  SELECT PORTFOLIO SERVICING, INC., 3217 South Decker Lake Drive, Salt Lake City, UT 84119
Pursuant to a Servicing Agreement between the Mortgage Servicer and Mortgagee, the Mortgage Servicer is authorized to represent the Mortgagee. Pursuant to the Servicing Agreement and Section 51.0025 of the Texas Property Code, the Mortgage Servicer is authorized to collect the debt and to administer any resulting foreclosure of the referenced property
**Recording Information:** Document No. 2003086140
**Legal Description:** LOT EIGHTEEN (18), IN BLOCK TWO (2), OF THE FINAL PLAT OF MISSION ESTATES SUBDIVISION, SECTION THREE (3), IN GALVESTON COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF, RECORDED IN VOLUME 18, PAGE 91 OF THE MAP RECORDS IN THE OFFICE OF THE COUNTY CLERK OF GALVESTON COUNTY, TEXAS.

**Date of Sale:** May 3, 2022 between the hours of 10:00 AM and 1:00 PM.
**Earliest Time Sale Will Begin:** 10:00 AM
**Place of Sale:**  The foreclosure sale will be conducted at public venue in the area designated by the GALVESTON County Commissioners Court pursuant to Section 51.002 of the Texas Property Code as the place where foreclosure sales are to take place, or if no place is designated by the Commissioners Court, the sale will be conducted at the place where the Notice of Trustee's Sale was posted.

JOHN SISK OR ISRAEL CURTIS, TRACI YEAMAN, TIM WORSTELL, AARON CRAWFORD, KELLY MCDANIEL, CARL MEYERS, LEB KEMP, CARY CORENBLUM, MATTHEW HANSEN, STEPHEN MAYERS, COLETTE MAYERS, JAMI HUTTON, AMY OIAN, EVAN PRESS, JOSHUA SANDERS, DAVID BARRY, PATRICIA POSTON, NICK POSTON, DAVID POSTON, ANNA SEWART, KEITH WOLFSHOHL, BYRON SEWART, HELEN HENDERSON, CHRIS POSTON, AUSTIN DUBOIS, NICK FRAME, CHEYANNE TROUTT, MELISSA KITCHEN, STEVE LEVA, SANDY DASIGENIS, LILLIAN POELKER OR JEFF LEVA have been appointed as Substitute Trustee(s), ('Substitute Trustee') each empowered to act independently, in the place of said original Trustee, upon the contingency and in the manner authorized by said Deed of Trust.  The Substitute Trustee will sell the Property by public auction to the highest bidder for cash at the place and date specified. The sale will begin at the earliest time stated above or within three (3) hours after that time.  If the sale is set aside for any reason, the Purchaser at the sale shall be entitled only to a return of the funds paid. The Purchaser shall have no further recourse against the Mortgagor, the Mortgagee or the Mortgagee's attorney.

**NOTICE IS FURTHER GIVEN** that, except to the extent that the Substitute Trustee(s) may bind and obligate the Mortgagors to warrant title to the Property under the terms of the Deed of Trust, conveyance of the Property shall be made 'AS IS' 'WHERE IS' without any representations and warranties whatsoever, express or implied, and subject to all matters of record affecting the Property.

<u>A debtor who is serving on active military duty may have special rights or relief related to this notice under federal law, including the Servicemembers Civil Relief Act (50 U.S.L. §§ 3901 et seq.), and state law, including Section 51.015 Texas Property Code. Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice.</u>

THIS INSTRUMENT APPOINTS THE SUBSTITUTE TRUSTEE(S) IDENTIFIED TO SELL THE PROPERTY DESCRIBED IN THE SECURITY INSTRUMENT IDENTIFIED IN THIS NOTICE OF SALE.  THE PERSON SIGNING THIS NOTICE IS THE ATTORNEY OR AUTHORIZED AGENT OF THE MORTGAGEE OR MORTGAGE SERVICER.


Anthony Adan Garcia, ATTORNEY AT LAW
HUGHES, WATTERS & ASKANASE, L.L.P.
1201 Louisiana, Suite 2800
Houston, Texas  77002
Reference: 2021-001401

c/o Auction.com, LLC
1 Mauchly
Irvine, California 92618

## FILED

Instrument Number:      *FILED2022000193*

Filing Fee: 3.00

Number Of Pages:        2

Filing Date: 03/03/2022 9:25AM

I hereby certify that this instrument was FILED on the date and time stamped hereon and
RECORDED in the OFFICIAL PUBLIC RECORDS of Galveston County, Texas.



**Dwight D. Sullivan**, County Clerk
Galveston County, Texas

NOTICE: It is a crime to intentionally or knowingly file a fraudulent court record or instrument with the clerk.

**DO NOT DESTROY** - *Warning, this document is part of the Official Public Record.*

# EXHIBIT "4"

When recorded mail to:
Hughes, Watters & Askanase
1201 Louisiana 28th Floor
Houston, Texas 77002-4000

## APPOINTMENT OF SUBSTITUTE TRUSTEE

STATE OF TEXAS )

COUNTY OF GALVESTON )   KNOW ALL MEN BY THESE PRESENTS:

WHEREAS, TIMOTHY L. BOURGEOIS AND WIFE, GWEN A. BOURGEOIS BY VIRTUE OF DEED FILED FOR RECORD UNDER GALVESTON COUNTY CLERK'S FILE NO.9718383 was the original Grantor(s), ELDON L. YOUNGBLOOD was the original Trustee, and NEW CENTURY MORTGAGE CORPORATION was the original Beneficiary under that certain Deed of Trust dated NOVEMBER 15, 2003 and recorded on DECEMBER 04, 2003 as Instrument Number 2003086140 of the official records of the Recorder of GALVESTON County, Texas, and

WHEREAS, the Deed of Trust encumbers real property situated in GALVESTON County, Texas, being more particularly described as:

Legal Description attached hereto as Exhibit "A".

WHEREAS, the undersigned, who is the present Beneficiary under said Deed of Trust, desires to appoint a new Trustee in place and stead of said original Trustee, or successor Trustee, thereunder,

NOW THEREFORE, the undersigned hereby appoints John Sisk, Israel Curtis, Traci Yeaman, Tim Worstell, Aaron Crawford, Kelly McDaniel, Carl Meyers, Leb Kemp, Cary Corenblum, Matthew Hansen, Stephen Mayers, Colette Mayers, Jami Hutton, Amy Oian, Evan Press, Joshua Sanders, David Barry, Patricia Poston, Nick Poston, David Poston, Anna Sewart, Keith Wolfshohl, Byron Sewart, Helen Henderson, Chris Poston, Austin DuBois, Nick Frame. Cheyanne Troutt, Melissa Kitchen, Steve Leva, Sandy Dasigenis, Lillian Poelker or Jeff Leva as Substitute Trustee under said Deed of Trust.

BENEFICIARY

Deutsche Bank National Trust Company, as Trustee, in

trust for the registered holders of Morgan Stanley ABS

Capital I Inc. Trust 2004-NC3, Mortgage Pass-Through

Certificates, Series 2004-NC3, by Select Portfolio

Servicing, Inc., as attorney-in-fact

By: _____

Name: **Lucretia Birkinshaw**

Title: **Document Control Officer**

Select Portfolio Servicing, Inc.

Date: _____

1

TX001.A002

STATE OF UTAH                )

COUNTY OF SALT LAKE    )

On this ⟨15⟩ day of ⟨March⟩, in the year 20⟨22⟩, before me

⟨Anayeli Curiel⟩

_____, a notary public, personally appeared

⟨Lucretia Birkinshaw⟩    ✗    , a ⟨Document Control Officer⟩ of Select Portfolio

Servicing, Inc., proved on the basis of satisfactory evidence to be the person whose name is subscribed to

this instrument, and acknowledged that he/she executed the same. Witness my hand and official seal.

Notary Public

✗ **Personally Known**

ANAYELI CURIEL
Notary Public  State of Utah
My Commission Expires on:
September 30, 2025
Comm. Number: 720700

2

# EXHIBIT "A".

*Lot Eighteen(18), in Block Two (2), of the Final Plat of MISSION ESTATES SUBDIVISION, SECTION THREE (3), in Galveston County, Texas, according to map or plat thereof, recorded in Volume 18, Page 91 of the Map Records in the office of the County Clerk of Galveston County, Texas.*

# FILED AND RECORDED

Instrument Number:       *2022018679*

Recording Fee: 41.25

Number Of Pages:       4

Filing and Recording Date: 03/21/2022 8:20AM

I hereby certify that this instrument was FILED on the date and time stamped hereon and RECORDED in the OFFICIAL PUBLIC RECORDS of Galveston County, Texas.



**Dwight D. Sullivan**, County Clerk
Galveston County, Texas

NOTICE: It is a crime to intentionally or knowingly file a fraudulent court record or instrument with the clerk.

**DO NOT DESTROY** - *Warning, this document is part of the Official Public Record.*