**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| TIMOTHY L. BOURGEOIS and | § | |
| GWEN A. BOURGEOIS, | § | |
| | § | |
| Plaintiffs | § | |
| | § | C. A. No. 3:22-cv-146 |
| VS. | § | |
| | § | |
| SELECT PORTFOLIO SERVICING, INC. | § | |
| HUGHES,WATTERS&ASKANASE,L.L.P. | § | |
| and its agent, ANTHONY ADAN GARCIA, | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFFS' MOTION TO REMAND

Pursuant to 28 U.S.C. § 1447(c) and other applicable law, Plaintiffs, Timothy L. Bourgeois and Gwen A. Bourgeois ("Plaintiffs"), through their undersigned counsel, files this Motion to Remand the above-styled case from the United States District Court for the Southern District of Texas, Galveston Division back to the 10th Judicial District Court of Galveston County, Texas, the forum of Plaintiff's choosing, because there are issues pertaining to the interpretation of Texas State laws and codes and also due to Defendant Select Portfolio Servicing, ("SPS") Inc.'s improper removal to this Court based on falsely claimed diversity jurisdiction and would show this Court the following:

## PROCEDURAL BACKGROUND

1.     Plaintiffs executed a Promissory Note on November 15, 2003 for a home equity loan in the amount of $172,000.00 in favor of the now-defunct New

1

Century Mortgage Corporation. That same day, Plaintiffs also executed a Deed of Trust, also in favor of New Century Mortgage Corporation, which was duly recorded in the Official Records of the Galveston County Recorder's Office on December 4, 2003.

2.      On September 22, 2006, an "Assignment of Note and Deed of Trust" was executed by an alleged employee (David Sunlin) of Bank of America, N.A., the servicer of the Plaintiff's mortgage loan at that time, which, inter alia, claimed that he was a "Sr. Vice President" of New Century Mortgage Corporation, when in fact, he committed perjury within said document because he was not said officer as claimed within the contents of the document. Said document was recorded in the office of the Galveston County, Texas Clerk's public record on October 11, 2006 and at that point in time, served as official notice of "assignment" against the Plaintiffs' property.

3.      The Plaintiffs initiated a lawsuit in the 10th Judicial District Court of Galveston County, Texas, Cause No. 22-CV-0757, after receiving notice from Defendant Hughes, Watters & Askanase, L.L.P. ("HWA") and its agent, Defendant Anthony Adan Garcia ("Garcia"), declaring that the Plaintiffs' property would be sold at public sale on May 3, 2022, which forced the Plaintiffs to seek and successfully obtain an ex parte temporary restraining order on April 29, 2022.  There

were no federal questions contained within the Plaintiff's Complaint, attached hereto as *Plaintiff's Exhibit 1* and incorporated by reference herein.

4.      Defendant SPS filed an answer to the Plaintiffs' Complaint in State Court on May 3, 2022, yet the Defendants HWA and Garcia did not file an answer before Defendant SPS removed the Plaintiffs' case to this Court on May 6, 2022, in what Plaintiffs' claim was a snap removal, claiming that Defendants HWA and Garcia were wrongfully joined as a means to defeat diversity jurisdiction, which the Plaintiffs herein claim is false, as the remaining Defendants are in fact, citizens of the forum state and operating as actors under the direction of Defendant SPS in attempting to obtain a foreclosure on the Plaintiffs' property, in contravention of 28 U.S.C. § 1441(b)(2), in attempting to enforce a foreclosure sale in contravention of Texas Statutes.

5.      Further, the Plaintiffs alleged in their State action that the Texas Civil Practice & Remedies Code § 16.033 took effect (*see the footnotes within said code,* "Acts 2007, 80th Leg., R.S., Ch. 819 (S.B. 1781), Sec. 1, eff. June 15, 2007."), the Plaintiff's legal rights to challenge the facial, technical and false defects contained therein apply in this case.  The Plaintiff also alleged in their State Complaint that Defendants SPS, HWA and Garcia, and each of them, attempted to sell the Plaintiffs' property without first filing a Rule 736 motion, further contravening Article 50 of the Texas State Constitution and knowing full well that Defendant SPS never acted

upon the two-year statute of limitations when it obtained a Home Equity Foreclosure Order on November 17, 2016 in Cause No. 16-CV-0945. Thus, the actions of Defendant SPS were improper and Defendants HWA and Garcia were properly included in the Plaintiffs' State Complaint herein because they acted in concert with each other in an attempt to effectuate a May 3, 2022 sale of the Plaintiffs' property.

6.    Additionally, the Plaintiffs also claimed in their State Complaint that the Defendants HWA and Garcia participated in the creation of the document which was improperly recorded in attempting to appoint a substitute trustee to conduct said May 3, 2022 sale of the Plaintiffs' property; thus, making them co-conspirators in an attempt to slander the Plaintiffs' title, as the Notice of Foreclosure Sale was recorded before the Appointment of Substitute Trustee document was recorded, thus, slandering the title to the Plaintiffs' property. The evidence in this matter involves the Defendants HWA and Garcia, who are citizens of the State of Texas, licensed and doing business in the State of Texas and directly involved in engineering the May 3, 2022 sale notice and the attempted substitute trustee appointment, as shown in the Plaintiffs' state-based Complaint, all the while refusing to provide the Plaintiffs with a full accounting as requested by the Plaintiffs.

7.    Defendant SPS's removal to this Court in this matter was inappropriate for the following reasons:

      (a.)    the removal contains no pertinent questions of a federal nature;

4

(b.)    the removal asserts improper joinder, when in fact, Defendants HWA and Garcia's names are all over the publicly-recorded documents and thus are suspect of participating in a scheme to wrongfully foreclose on the Plaintiffs' property.   In its Notice of Removal, Defendant SPS, at Paragraph 25, admits Defendants HWA and Garcia are citizens of Texas; and the publicly-recorded evidence places the two Texas Defendants in direct involvement in the document production used to create alleged standing to carry out a foreclosure;

(c.)    the removal stated that the Texas Defendants were never served, when in fact, they were served on the same date that Defendant SPS was served with notice of suit and the temporary restraining order was effectuated against ALL Defendants, not just Defendant SPS.   Now Defendant SPS, by and through a different law firm, comes before this Court expecting it to negate a state judge's Order and further makes use of a forum of limited jurisdiction to effectuate a 12(b)(6) motion, when the facts stated in the Plaintiffs' complaint are specific to and conform to the jurisdictional requirements of *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009).   Should the Defendants, and each of them, foreclose on the Plaintiffs' property, actual financial harm would come to them by way of alleged criminal behavior, which this Court should not tolerate, which is why the state judge contemplated that fact and signed the temporary restraining order;

(d.)   the removal notice specifically claims that the Texas Defendants violated the Texas Debt Collection Act when they sent a notice to the Plaintiffs demanding a sum certain and when demanded by certified mail (by the Plaintiffs) for a full accounting, the Texas Defendants failed to answer, making them a necessary party to the Plaintiffs' Complaint;

(e.)   Under *Spokeo v. Robins*, **S.Ct. 13-1339** (2016), which Texas federal courts judicially recognize, and which was adopted by the Texas Supreme Court in *Data Foundry, Inc. v. City of Austin*, **No. 19-0475**, pp 4-5 (Tex-April 10, 2021) citing *Heckman v. Williamson Cty.*, **369 S.W.3d1337, 154**(Tex. 2012).(Citing *Lujan v. Defenders of Wildlife*, **504 U.S. 555**(1992).   The Plaintiffs herein did not invoke federal jurisdiction; otherwise, they would have filed their action in federal court and not state court.   An "injury-in-fact" occurred when the Texas Defendants, in cooperation with Defendant SPS, slandered the Plaintiffs' title to their property with improperly recorded documents in the public record, which traces the challenged conduct to that of the Defendants, and each of them … *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561, Pp. 5-6.   An injury-in-fact requirement requires a Plaintiff(s) to show that "an invasion of a legally protected interest" (marketable and vendible title to their property) is "concrete and particularized", *Lujan, supra*, at 560. Pp. 7-11.   Slander of title was among the

causes of action directly and proximately created and attributed to all named Defendants;

(f.)   the claims asserted by the Plaintiffs in their state-based suit involve violations of Texas Codes, specifically mentioned as causes of action in the Plaintiffs' Complaint; and

(g.)   Defendant SPS filed their Notice of Removal, knowing that the remaining Defendants in this case could be held as suspect in the creating and recording of false documents in the real property records in the State of Texas, the subject of which was going to be presented before a jury in the Plaintiffs' state case. Defendant SPS knew or should have known it could be implicated in the directing and execution of publicly-recorded documents as part of the state-based Complaint; thus, the real reason for Defendant SPS's avoidance for "facing the music" in state court by claiming there was no controversy in the Plaintiffs' Complaint when in fact it knew or should have known otherwise.

8.    The suit commenced by the Plaintiffs against the Defendants, and each of them, cannot be frivolous if each of them participated in a scheme to defraud the public record as well as the Plaintiffs and the Plaintiffs have asked the state court for a criminal referral to the Galveston County, Texas District Attorney.  There were sufficient allegations in the Plaintiffs' Complaint, evidenced by the public record, to demonstrate the involvement of the Texas Defendants.

9.      The Plaintiffs further question why Defendant SPS retained the law

firm of Hirsch & Westheimer, P.C. if it wasn't concerned about a conflict of interest

in having their own Texas Defendants represent them in state court.  It would appear

the Texas Defendants were involved enough to cause foreclosure-related documents

to be recorded in the public record but not to be named as necessary parties under

Texas Property Code for their involvement in their creation and execution.

10.     Thus, the Plaintiffs believe this Removal by Defendant SPS is a genuine

waste of this Court's time and resources and must be remanded back to the Court of

original jurisdiction.

11.     Plaintiffs have joined an in-state defendant, Davin Sunlin in their

Amended Complaint.  Defendant Sunlin was mentioned in the original state court

petition with the same allegations though not named as defendant at that time though

the same activities of Sunlin suffice to comply with plaintiffs' allegations of

wrongdoing against Sunlin in their amended complaint.

12. This matter should be remanded to state district court as foreclosures

In Texas are a policy problem of substantial public importance; retention of

jurisdiction would be disruptive to Texas's need to rule of issues on first impression.

A. Under Federal common law, there are many different reasons whey federal

courts abstain from deciding cases removed to their courts.  Federal courts may

abstain from the exercise of diversity jurisdiction "where there is an important

8

countervailing interest served by having the issue decided a state court." *State v.*

*Mushroom King, Inc.*, **77D.R. 8113, 818**, (D. Or. 1987).

The U. S. Supreme court enunciated this type of abstention back in 1943, and courts

have been exercising it ever since:

> Although a federal equity court does have jurisdiction of a particular
> proceeding, it may, in ts sound discretion, whether it jurisdiction in invoked
> on the ground of diversity of citizenship or otherwise, "refuse to enforce or
> protect legal rights, the exercise of which may be prejudicial to the public
> interest," for it "is in the public interest that federal courts of equity should
> exercise their discretionary power with proper regard for the rightful
> independence of state government in carrying out their domestic policy"

*Burford.v. Sun Oil Co.*, **319 U.S./ 315, 316-317, 63 S. Ct. 1098. 1099** (1943)(quoting

*United States v. Dern,* **289 U.S. 352, 360, 53 S.Ct. 614, 617** (1934); *Pennsylvania*

*v. Williams*, **294 U.S. 176, 185, 55 S.Ct. 380, 385** (1935)).There must be reluctance

even greater when the right are strictly local, jurisdiction having no other basis that

the accidents of residence." *Hawks v. Hamill*, **288 U.S. 52, 61; 53 S.Ct. 240, 243**

(1933).

When no constitutional issue is raised, abstention is appropriate if the case

presents "difficult questions of state law bearing on policy problems of substantial

public import whose importance transcends the result in the case at bar." *Mushroom*

*King*, **77 B.R. at 818** (quoting Colorado River Water Conversation District V.

United States **424 U.S. 800, 814; 96 S.Ct. 1236, 1244; 47 L.Ed2d 483**(1976)). ""it

is enough that the exercise of federal review of the question would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Mushroom King*, **77 B.R. at 819**. If an issue in litigation is on of first impression for the state, which significantly affects the states statutory scheme, the state court should decide the matter. *See id.* ("I conclude that this issue is one first impression significantly affecting the state's statutory scheme…..It is a matter of substantial public concern and important state policy. …..For these reasons and as a matter of comity between the federal and state systems, I grant the state's motion to abstain and remand.") *See also, Kirkbride v. Continental Cas. Co..*, **696 F. Supp. 496, 499** (N. D. Cal. 1988)(a question of first impression is a matter substantial state interest in abstention analysis).

B.  One cannot argue with the statement that home equity foreclosures in the State of Texas are governed by state law, bearing on policy problems of substantial public importance.  The issue presented in this case transcend the results of this particular piece of litigation.  Texas court dockets are filled with lawsuits by homeowners against their lenders, servicers, trustees, and investors.  Lenders and other named defendants routinely remove the cases to federal court, in spite of plaintiff's choice of forum and in spite of the issues of state, not federal concern. Continued federal court determination of these cases is disruptive of this State's need to establish a coherent policy in resolving the homeowner lawsuits filed here.

C.  The one key issue that is an issue of first impression which involves a REMIC trust as the holder of the note and deed of trust with the beneficiaries being the certificate holders of the REMIC trust.  The vast majority of foreclosures are done at the request of these REMIC trusts.  Typically, the servicer appears and uses its own records and not the records or reports made to the REMIC trust to demonstrate to the Court that mortgagors are in default and the record or reports made to the Trustee of the REMIC are never used to show the mortgagors are in default.  Courts have in the past accepted records of the servicer to prove a default. These cases pre-date the Texas Supreme Court's decision in *Data Foundry, Inc. v. City of Austin*, **No. 19-0475**, pp 4-5 (Tex-April 10, 2021) in adopting the U;S. Supreme Court's decision in *Spokeo v. Robins*.

C.1.  The REMIC trust as the holder of the deed of trust and promissory notes for those loans in the mortgage pool and receives the payments from the servicer based these instruments which are then disbursed to the certificate holders of the REMIC trust.

As part of the formation of the  REMIC as in this case,  the servicer is tasked with covering any delinquent payments by any of the mortgagors in the mortgage pool as provided by the terms of the Prospectus Supplement filed with U.S. Securities & Exchange Commission.  In this instance, the servicer is required to make "P & I Advances".  On page 97/297 of the Prospectus for the Morgan Stanley

11

ABS Capital I Trust 2004-NCE (See Exhibit A attached hereto and incorporated herein for all purposes) downloaded by the undersigned from U.S. Securities & Exchange Commission's website, the Prospectus Supplement states that:

> "P& I ADVANCES AND SERVICER ADVANCES
>
> P&I Advances.  The servicer is required to make P&I Advances On each Servicer Remittance Date with respect to each mortgage loan, subject to its determination in tis good faith business judgment that such advance would be recoverable.  Such P&I Advances by the servicer are reimbursable to the servicer subject to certain conditions and restrictions, and are intended to provide sufficient funds for the payment of interest to the holder of the certificates.  Notwithstanding the servicer's determination in its good faith business judgment that a P&I Advance was recoverable when made, if a P&I Advance becomes a nonrecoverable advance, the servicer will be entitled to reimbursement for that advance from the trusts fund. See "Description of the Certificates—Payments on the Mortgage Loans in this prospectus supplement."

Further, on page 98/297 of said Prospectus Supplement ( Exhibit 2), it states that :

12

""SERVICER REPORTS

> The servicer is required to deliver to the depositor and the trustee a servicer remittance report setting forth the information necessary for the trustee to make the distributions set forth under 'Description of the Certificates—Distributions of Interest and Principal' in this prospectus supplement and containing the information to be included in the distribution report for the distribution date delivered by the trustee."

C3. Based on these mandatory requirements for the servicer, it is of primary importance to use the Servicer's Reports of income and disbursements to the Trustee to show default of the Plaintiffs in accord with the Texas law and that defendants have suffered injury which is (1) an injury in fact that is both concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) that the injury is fairly traceable to defendant's challenged action; and (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Data Foundry, Inc. v. City of Austin*, **No. 19-0475**, pp 4-5 (Tex-April 10, 2021) citing *Heckman v. Williamson Cty.*, **369 S.W.3d1337, 154**(Tex. 2012).(Citing *Lujan v. Defenders of Wildlife*, **504 U.S. 555**(1992).   Defendants attempted to foreclose claiming injury, i.e., that the plaintiffs are in default of their mortgage. Plaintiffs allege that under standards as stated by the Texas Supreme Court in the

13

*Data Foundry* case, the defendants have not be harmed as the plaintiffs are not in prvity with defendant Select  Portfolio Servicing, Inc.  The issues raised have not been ruled in by a Texas court.

## CONCLUSION

Based on the fact that Plaintiff's Complaint is based  entirely on state law. There are no U. S. constitutional questions.  The original in-state defendants of Hughes, Watters & Askanasne L.L.P. and Anthony Adan Garcia were properly joined has having viable allegations of violations of state law.  Plaintiffs have properly joined an in-state defendant, David Sunlin.

Furthermore, there are important issues of first impression that should be addressed by Texas courts to have a consistent and coherent body of law regarding Texas Home Equity law. Based on the above and foregoing, Plaintiffs petition this Court to remand the case, or to abstain from exercising jurisdiction and remand this case to the state court where it was originally filed.

Respectfully submitted,
James Andersen Attorney


*/s/ James M. Andersen*
James M. Andersen
Texas Bar No. 01165850
James Andersen Attorney
17041 El Camino Real
Suite 204
Houston, TX  77058

14

Phone: (281) 488-2800
Fax: (281) 480-4851
Email: jandersen.law @gmail.com
Attorney for Plaintiffs
TIMOTHY L. BOURGEOIS and
GWEN A. BOURGEOIS

## Certificate of Conference

I certify that on June 6, 2022, I conferred with each opposing counsel and each is opposed to Plaintiffs' Motion to a remand this case back to state district court.

*/s/James M. Andersen*
James M. Andersen

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Motion was forwarded to all parties and/or their attorneys of record, in accordance with the Federal Rules of Civil Procedure, on this the 6th day of June, 2022, through the Court's ECF filing system  addressed as follows:

Damian W. Abreo
Total Plaza
1201 Louisiana Street, 28th Floor
Houston, Texas 77002
dabreo@hwa.com (E-mail)

mhord@hirschwest.com
emettenbrink@hirschwest.com
Michael F. Hord, Jr.
Eric C. Mettenbrink
Hirsch & Westheimer, P.C.
1415 Louisiana, 36th Floor
Houston, TX 77002

*/s/James M. Andersen*
James M. Andersen

16